## THE AUSSA.

### No. 124a.

District Court, D. New Jersey.

Dec. 22, 1943.

928

George A. McNulty and Albert Parker, both of Washington, D. C., for petitioner.

B. Thorn Lord, of Trenton, N. J., for libelant.

Homer L. Loomis (of Loomis & Williams), of New York City, for claimant.

**SMITH, District Judge.**

The libellant, United States of America, on July 16, 1941, having previously seized the vessel Aussa, filed a libel of information, under Section 3, title 2 of the Act of June 15, 1917, c. 30, 40 Stat. 220, as amended by Section 3(b) of the Act of March 28, 1940, c. 72, 54 Stat. 79, 50 U.S.C.A. § 193, in which it prayed that the said vessel be condemned and forfeited. The libel propounded as causes of forfeiture the violation of the said Act, to wit, the willful injury and destruction of the vessel, and the use of the vessel as a place of resort for persons conspiring and preparing to commit offenses against the United States. The claimant, "Italia"-Societa Anonima di Navigazione, on August 8, 1941, filed a claim in which it asserted ownership of the said vessel and the right to its possession. The claim was properly supported by exceptions, subsequently filed, challenging the regularity and sufficiency of the libel.

On September 11, 1941, while the suit was thus pending, the United States Maritime Commission, acting under the authority of the President, pursuant to and in accordance with the Act of June 6, 1941, c. 174, 55 Stat. 242, 50 U.S.C.A.Appendix § 1271 et seq., and Executive Order No. 8771, 6 Fed.Reg. 2759, promulgated thereunder, requisitioned the use and possession of the said vessel. Thereafter, on October 14, 1941, on the petition of the libellant and over the objection of the claimant, the validity of the requisition was recognized

by the court and possession of the vessel was surrendered to the Commission. The court, however, retained jurisdictional custody of the vessel for the purposes of this suit.

On December 11, 1941, the Senate and House of Representatives, by Joint Resolution, 55 Stat. 797, 50 U.S.C.A.Appendix note preceding section 1, formally declared a state of war between the United States and the Government of Italy. Thereafter, on July 22, 1942, the petitioner, Alien Property Custodian, acting under the authority of the President, pursuant to and in accordance with Section 5(b) of the Trading with the Enemy Act, 40 Stat. 415, 50 U.S.C.A.Appendix 5(b), as amended by Section 301 of the First War Powers Act.[1] 1941, 55 Stat. 839, 50 U.S.C.A.Appendix 616, and Executive Order No. 9095, 50 U.S.C.A.Appendix § 6, note, having determined that the claimant was an enemy within the meaning of Section 2 of the said Act, 50 U.S.C.A.Appendix, § 2[2] and that the said vessel was the property of a national of a foreign country designated in Executive Order No. 8389 as amended, 12 U.S.C.A. § 95, note, demanded and seized the vessel. This action of the petitioner and the determinations upon which it was predicated are not subject to judicial review. Cf. Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774; Gray v. Powell, 314 U.S. 402, 411, 62 S.Ct.

326, 86 L.Ed. 301; Adams v. Nagle, 303 U.S. 532, 542, 58 S.Ct. 687, 82 L.Ed. 999; Dow v. Ickes, 74 App.D.C. 319, 123 F.2d 909; In re Spier Aircraft Corporation, 3 Cir., 137 F.2d 736.

It is clear that under the vesting order (Vesting Order No. 52, 7 Fed.Reg. 5738), published by the petitioner and served upon the claimant, the claimant was divested of, and the petitioner invested with, all right, title, and interest in the said vessel. It is equally clear that under the terms of this order the divestment was "unconditional and without redress or right of compensation." The effect of the seizure and the scope of the vesting order are not open to question. The right, title, and interest acquired by the petitioner was absolute, and the right, title, and interest of the claimant was irrevocably terminated. 50 U.S.C.A.Appendix § 616; United States v. Chemical Foundation, 272 U.S. 1, 47 S.Ct. 1, 71 L.Ed. 131; Woodson v. Deutsche, etc., Vormals, 292 U.S. 449, 54 S.Ct. 804, 78 L.Ed. 1357; Cummings v. Deutsche Bank, 300 U.S. 115, 57 S.Ct. 359, 81 L.Ed. 545.

The petitioner on July 30, 1942, filed a petition in which, after reciting the facts hereinabove summarized, he prayed for the following relief: "(1) For an order substituting petitioner in all respects as a party herein in the place and stead of the Claimant; (2) That all claims, pleadings,

---

[1] "(1) During the time of war or during any other period of national emergency declared ·by the President, the President may, through any agency that he may designate, or otherwise, and under such rules and regulations as he may prescribe, by means of instructions, licenses, or otherwise—* * *

"(B) investigate, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest,

by any person, or with respect to any property, subject to the jurisdiction of the United States; and any property or interest of any foreign country or national thereof shall vest, when, as, and upon the terms, directed by the President, in such agency or person as may be designated from time to time by the President, and upon such terms and con-

ditions as the President may prescribe such interest or property shall be held, used, administered, liquidated, sold, or otherwise dealt with in the interest of and for the benefit of the United States, and such designated agency or person may perform any and all acts incident to the accomplishment or furtherance of these purposes; * * *."

[2] "2. The Alien Property Custodian is authorized and empowered to take such action as he deems necessary in the national interest, including, but not limited to, the power to direct, manage, supervise, control or vest, with respect to: * * * (e) any ship or vessel or interest therein, in which any foreign country or national thereof has an interest; and (f) any property of any nature whatsoever which is in the process of administration by any person acting under judicial supervision or which is in partition, libel, condemnation or other similar proceedings and which is payable or deliverable to, or claimed by, a designated enemy country or national thereof."

motions or exceptions heretofore filed herein on behalf of the Claimant be dismissed, denied and overruled as to the Claimant, but without prejudice as to petitioner; that the Claimant be adjudged without any right, title or interest in said vessel and that such right, title and interest, if any, as the Claimant may have had therein prior to said Vesting Order be adjudged vested in petitioner; and that all claims, pleadings, motions or exceptions heretofore filed herein on behalf of the Claimant be ordered to stand of record for the benefit of petitioner, pending an opportunity to petitioner to amend, supplement or withdraw the same as petitioner may be advised; (3) That leave so to amend, supplement or withdraw the same be granted to petitioner, as well as leave to file such other claims, pleadings, motions or exceptions as petitioner may be advised." The claimant, in response to the said petition, filed an answer in which, after admitting the essential facts, it disputed the right of the petitioner to relief. The suit is before the court at this time on the issues of law thus raised, but it clearly appears unnecessary to decide them.

It is apparent from the record before the court that the seizure of the vessel, the legality of which is not questioned, deprived the court of jurisdiction of the suit. It seems obvious that upon the seizure of the vessel by the petitioner, acting on behalf of the United States of America, the court became powerless to grant the relief sought by the libellant, and the issues of the original controversy became moot. The United States of America was invested with, and the claimant divested of, all right, title, and interest in the vessel. It would be futile, under the circumstances, for the court to proceed to a determination of the issues raised in the suit when its judgment would be wholly ineffectual for lack of a subject matter. It is well established that where, as here, the existing controversy has come to an end, either by an act of the parties or by operation of law, the case becomes moot and should be dismissed. Duke Power Co. v. Greenwood County, 299 U.S. 259, 267, 57 S.Ct. 202, 81 L.Ed. 178; United States v. Anchor Coal Co., 279 U.S. 812, 49 S.Ct. 262, 73 L.Ed. 971; Brownlow v. Schwartz, 261 U.S. 216, 217, 43 S.Ct. 263, 67 L.Ed. 620; Heitmuller v. Stokes, 256 U.S. 359, 361, 41 S.Ct. 522, 65 L.Ed. 990; United States v. Alaska S. S. Co., 253 U.S. 113,

116, 40 S.Ct. 448, 64 L.Ed. 808; United States v. Hamburg-Americanische, etc., Co., 239 U.S. 466, 475, 36 S.Ct. 212, 60 L.Ed. 387; Cover v. Schwartz, 2 Cir., 133 F.2d 541, 546; Spreckels Sugar Co. v. Wickard, 75 U.S.App.D.C. 44, 131 F.2d 12, 14; Otis v. International Mercantile Marine Co., 9 Cir., 95 F.2d 539, 541.

The dismissal, however, is opposed by the petitioner on the ground that this is a proceeding in rem in which the libellant "seeks to divest the interests of the whole world in the vessel, whether such interests be in the nature of legal title, mortgage, maritime lien or otherwise." This argument will not sustain the authority of the court to retain jurisdiction. The Act of June 6, 1941, hereinabove cited, under which the use and possession of the vessel was originally requisitioned, preserved all subsisting claims and liens, and reserved to the holders thereof the right to commence suit in the manner prescribed by Section 2 of the Suits in Admiralty Act, 46 U.S.C.A. § 742. The remedy therein provided is exclusive. It is clear that the only controversy, if any, remaining after the use and possession of the vessel had been requisitioned, was that between the libellant and the claimant. This controversy ceased upon the lawful seizure of the vessel by the petitioner.

If the claimant is ousted on the prayer of the petitioner, and the latter is substituted to the exclusion of the former, there will be a complete absence of adverse interests essential to a justiciable controversy. The Pietro Campinella v. The Euro, D.C., 47 F.Supp. 374, and the cases therein cited. "The duty of this Court, as of every judicial tribunal, is limited to determining rights of persons or of property which are actually controverted in the particular case before it. When, in determining such rights, it becomes necessary to give an opinion upon a question of law, that opinion may have weight as a precedent for future decisions. But the court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it." People of State of California v. San Pablo and Tulare Railroad Co., 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747; United States v. Hamburg-Americanische, etc., Co., supra. It seems rea-

sonably clear that a judgment on the regularity and sufficiency of the libel, under the circumstances here existing, would violate this fundamental doctrine of judicial procedure.

The claimant, in opposition to the present petition and the dismissal of the suit, urges that it has a right to defend the libel notwithstanding its status as an enemy. It is well established that an alien enemy, even though he may not maintain a suit to enforce his rights, may defend a suit in which his rights, either personal or property are assailed. Watts & Co. v. Unione Austriaca, etc., 248 U.S. 9, 39 S. Ct. 1, 63 L.Ed. 100, 3 A.L.R. 323, and the cases therein cited. This rule, however, presupposes a defensible interest in the subject matter of the suit. This interest, in the immediate case, terminated upon the lawful seizure of the vessel by the petitioner.

This suit is dismissed, but without prejudice to the right of claimants, mortgagees, or lienors, if any, to pursue their lawful remedy under the Act of June 6, 1941, supra.